2021R00609/DAF

8/21/24
3:13

**FILED**
AUG 21 2024
AT 8:30
CLERK, U.S. DISTRICT COURT - DNJ
M

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. |
| | : | |
| v. | : | Crim. No. 24- **528 (ESK)** |
| | : | |
| ARTHUR SPITZER, | : | 18 U.S.C. § 1349 |
| MENDEL DEUTSCH, and | : | 18 U.S.C. § 1344 |
| JOSHUA FELDBERGER | : | 18 U.S.C. § 1343 |
| | : | 18 U.S.C. § 1028A(a)(1) |
| | : | 18 U.S.C. § 1014 |
| | : | 18 U.S.C. § 1957(a) |
| | | 18 U.S.C. § 2 |

## I N D I C T M E N T

The Grand Jury in and for the District of New Jersey, sitting in

Camden, charges:

## INTRODUCTION

1.      During 2019 and 2020, defendant ARTHUR SPITZER orchestrated a

scheme to defraud property owners and mortgage lenders by obtaining mortgage

loans for real estate properties that SPITZER did not own.  Defendant SPITZER

identified real estate properties in New Jersey and Brooklyn, New York that had

either no mortgages or mortgages in amounts significantly lower than the

property's market value.  Working at times without co-conspirators charged in this

Indictment, and at other times with defendants MENDEL DEUTSCH and JOSHUA

FELDBERGER, defendant SPITZER obtained more than $20,000,000 in mortgage

loans by using fraudulent documents purportedly showing that he—or entities he

controlled—had the authority to apply for mortgage loans.  The mortgage loan

proceeds were disbursed to bank accounts controlled by defendant SPITZER or were

used to otherwise benefit defendant SPITZER, such as to pay off defendant SPITZER's debts. Defendant SPITZER then caused the mortgage loans to default by not making the required payments, leaving the true property owners subject to foreclosure and eviction.

2.  Further, in 2020 and 2021, defendants ARTHUR SPITZER and MENDEL DEUTSCH fraudulently obtained millions of dollars of government loans that were intended for small businesses distressed by the COVID-19 pandemic by submitting loan applications that included false statements about the applicant companies' number of employees, revenues, cost of goods sold, or lost rents.

## COUNT 1
### (Wire Fraud)
### *(56th Street)*

## Background

1.  At all times relevant to this Indictment:

### Mortgage Lending

a.  Mortgage loans were loans made by banks and other financial institutions to borrowers: (a) in connection with the purchase of real estate; or (b) in connection with the refinancing of real estate. Mortgage loans were secured by the real estate property such that if the borrower defaulted on the loan, the lender would have the ability to seek foreclosure of the real estate property securing the loan.

b.  A mortgage loan borrower typically applied for a mortgage loan through a mortgage lender or a mortgage originator. If a borrower applied directly with a mortgage lender, the borrower would provide documentation directly to the

mortgage lender and the mortgage lender would directly fund the loan. If a borrower applied with a mortgage originator, sometimes the mortgage originator would make the initial loan to the borrower and then sell the loan to a mortgage lender after a short period of time. Other times, the mortgage originator would obtain and verify the relevant information for a mortgage lender, and then the mortgage lender would issue the mortgage loan directly to the borrower. The information submitted by a borrower was material to the mortgage lender's decision whether or not to extend a mortgage loan.

      c.    A mortgage loan typically was closed by a settlement agent. The settlement agent was responsible for receiving monetary instruments and funds provided by the borrower and mortgage funds from the lender to the title company's escrow account, and, when authorized by the parties to the transaction and the lender, for disbursing those funds from the escrow account to various individuals and entities, as detailed on the U.S. Department of Housing and Urban Development Settlement Statement (hereinafter "HUD-1 Settlement Statement"). The HUD-1 Settlement Statement detailed the actual disbursement of monies, including mortgage fund loans, to the proper entities and/or individuals. The HUD-1 Settlement Statement was required to accurately disclose the receipt and disbursement of all monies involved in a real estate transaction, including whether any monies were being used to pay off existing loans. The borrower and a representative of the title company typically signed the HUD-1 Settlement Statement affirming that it was true and accurate.

3

**Individuals and Entities**

d.      Defendant ARTHUR SPITZER was a resident of Toms River, New Jersey.

e.      Bank-1 was a "financial institution" within the meaning of Title 18, United States Code, Section 20.

f.      BSD Realty Holdings, Inc. was a New Jersey company controlled by defendant SPITZER. BSD Realty Holdings, Inc. had a bank account at Bank-1, whose signatory was defendant SPITZER.

g.      Mortgage Lender-1 was a mortgage lender with its principal place of business in California and therefore was a "financial institution" within the meaning of Title 18, United States Code, Section 20. Mortgage Lender-1 made mortgage loans directly to borrowers and also had relationships with mortgage originators, who made mortgage loans to the borrowers under guidelines provided by Mortgage Lender-1, which loans were then transferred to Mortgage Lender-1.

h.      Mortgage Originator-1 was a New Jersey mortgage originator that originated loans for Mortgage Lender-1. Mortgage Originator-1 also made loans to defendant SPITZER that were not secured by real estate.

i.      Settlement Company-1 was a title and real estate settlement company located in Howell, New Jersey.

j.      The Fedwire Funds Service ("Fedwire") was a real-time gross settlement system that enabled participants to transfer funds from one financial institution to another financial institution. Every Fedwire funds transfer involved

4

an exchange of electronic communications between Federal Reserve facilities in New Jersey and Texas.

## The Scheme to Defraud

2.    In or about August 2019, in Ocean County in the District of New Jersey, Kings County in the Eastern District of New York, and elsewhere, defendant

## ARTHUR SPITZER

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud, and aid and abet the scheme and artifice to defraud Individual-1 and Mortgage Lender-1, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice was in substance as set forth below.

## Object of the Scheme

3.    The object of the scheme was for defendant ARTHUR SPITZER to financially enrich himself and satisfy outstanding debts by fraudulently obtaining mortgage loans secured by real estate properties that he did not have authority to use as collateral for the mortgage loans.

## Manner and Means of the Scheme

4.    It was part of the scheme that, prior to 2000, Individual-1 purchased two residential buildings located on 56th Street in Brooklyn, New York (the "56th Street Properties"). There were no mortgage loans on the 56th Street Properties in 2019.

5.    It was further part of the scheme that in or around August 2019, defendant SPITZER created an entity (the "56th Street LLC") of which defendant SPITZER was the sole member.

6.    It was further part of the scheme that in or around August 2019, defendant SPITZER caused to be prepared deeds purportedly transferring ownership of the 56th Street Properties from Individual-1 to the 56th Street LLCs. These deeds were prepared without Individual-1's understanding or authorization.

7.    It was further part of the scheme that in or around August 2019, defendant SPITZER, acting on behalf of the 56th Street LLC, applied for and obtained loans of $1,200,000 on each of the two 56th Street Properties (for a total of $2,400,000) through Mortgage Originator-1 and Mortgage Lender-1. The mortgage loans were secured by the 56th Street Properties. Settlement Company-1 was the settlement agent for the mortgage transaction. Settlement Company-1 employees were located in New Jersey when they worked on the 56th Street transaction.

8.    It was further part of the scheme that Mortgage Lender-1 wired the mortgage proceeds to Settlement Company-1's escrow account as follows:

| Approximate Date | Approximate Amount | Description |
| --- | --- | --- |
| 8/27/2019 | $1,191,611.65 | Interstate wire, sent through the Fedwire system, from Mortgage Lender-1's bank account to Settlement Company-1's escrow account, representing the proceeds of the mortgage loan for the first of the 56th Street Properties. |

| 8/27/2019 | $1,191,611.65 | Interstate wire, sent through the Fedwire system, from Mortgage Lender-1's bank account to Settlement Company-1's escrow account, representing the proceeds of the mortgage loan for the second of the 56th Street Properties. |

9.      It was further part of the scheme that Settlement Company-1 wired approximately $1,900,000 of the 56th Street mortgage loan proceeds from its escrow account to a bank account at Bank-1 in the name of BSD Realty Holdings, Inc., which was controlled by defendant SPITZER as follows:

| Approximate Date | Approximate Amount | Description |
|---|---|---|
| 8/28/2019 | $850,250.00 | Interstate wire, sent through the Fedwire system, from Settlement Company-1's escrow account to the BSD Realty Holdings, Inc. bank account. |
| 8/28/2019 | $8,193.11 | Interstate wire, sent through the Fedwire system, from Settlement Company-1's escrow account to the BSD Realty Holdings, Inc. bank account. |
| 8/28/2019 | $20,391.11 | Interstate wire, sent through the Fedwire system, from Settlement Company-1's escrow account to the BSD Realty Holdings, Inc. bank account. |
| 8/28/2019 | $529,625.00 | Interstate wire, sent through the Fedwire system, from Settlement Company-1's escrow account to the BSD Realty Holdings, Inc. bank account. |
| 8/28/2019 | $529,625.00 | Interstate wire, sent through the Fedwire system, from Settlement Company-1's escrow account to the BSD Realty Holdings, Inc. bank account. |

10.     It was further part of the scheme that Settlement Company-1 wired more than $300,000 of the 56th Street mortgage loan proceeds to Mortgage Originator-1 to satisfy outstanding debts previously incurred by defendant SPITZER as follows:

| Approximate Date | Approximate Amount | Description |
|---|---|---|
| 8/28/2019 | $253,000 | Interstate wire, sent through the Fedwire system, from Settlement Company-1's escrow account to the Mortgage Originator-1 bank account. |
| 8/28/2019 | $60,000 | Interstate wire, sent through the Fedwire system, from Settlement Company-1's escrow account to the Mortgage Originator-1 bank account. |

11.     It was further part of the scheme that Individual-1 was not aware of defendant SPITZER's actions with respect to the preparation of the deeds purporting to transfer ownership of the properties to an entity controlled by defendant SPITZER, and Individual-1 did not authorize defendant SPITZER to obtain mortgage loans secured by the 56th Street Properties.

12.     It was further part of the scheme that Mortgage Lender-1 would not have funded these mortgage loans had it known that Individual-1 did not authorize the transfer of the 56th Street Properties to an entity controlled by defendant SPITZER and did not authorize defendant SPITZER to obtain mortgage loans secured by the 56th Street Properties.

13.     It was further part of the scheme that defendant SPITZER caused the 56th Street mortgage loans to default by failing to make the required payments.

### Execution of the Scheme to Defraud

14.     For the purpose of executing and attempting to execute the scheme and artifice to defraud, in Ocean County in the District of New Jersey, Kings County in the Eastern District of New York, and elsewhere, defendant

### ARTHUR SPITZER

8

did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, including a Fedwire funds transfer on or about August 28, 2019 from the bank account of Settlement Company-1, through processing facilities in New Jersey and Texas, to the bank account of BSD Realty Holdings Inc.

In violation of Title 18, United States Code, Sections 1343 and 2.

**COUNT 2**
(Wire Fraud)
*(Division Avenue)*

1.      Paragraph 1 of Count 1 of the Indictment is incorporated as if set forth in full herein.

**Background**

2.      At all times relevant to this Indictment:

      a.      Individual-2 was a resident of Brooklyn, New York.  Individual-2 owned and resided in an apartment in a building located on Division Avenue in Brooklyn, New York (the "Division Avenue Property").

**The Scheme**

3.      In or about August 2019, in Ocean County in the District of New Jersey, Kings County in the Eastern District of New York, and elsewhere, defendant

**ARTHUR SPITZER**

did knowingly and intentionally devise and execute a scheme and artifice to defraud Individual-2 and Mortgage Lender-1, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice was in substance as set forth below.

**Object of the Scheme**

4.      The object of the scheme was for defendant ARTHUR SPITZER to financially enrich himself and satisfy outstanding debts by fraudulently obtaining a mortgage loan secured by a real estate property that he did not have authority to use as collateral for the mortgage loan.

10

## Manner and Means of the Scheme

5.      It was part of the scheme that Individual-2 purchased the Division Avenue Property in or about 2001.  There was no mortgage loan on the Division Avenue Property in 2019.

6.      It was further part of the scheme that in or around September 2019, defendant SPITZER created an entity (the "Division Avenue LLC") of which defendant SPITZER was the sole member.

7.      It was further part of the scheme that in or around September 2019, defendant SPITZER caused Individual-2 to sign a deed transferring ownership of the Division Avenue Property from Individual-2 to the Division Avenue LLC.

8.      It was further part of the scheme that in or around September 2019, defendant SPITZER, through the Division Avenue LLC, applied for and obtained a $997,500 mortgage loan from Mortgage Lender-1 that was secured by the Division Avenue Property.  Settlement Company-1 served as settlement agent for the Division Avenue mortgage transaction.  Settlement Company-1 employees were located in New Jersey when they worked on the Division Avenue mortgage transaction and the mortgage was notarized by a Settlement Company-1 employee in New Jersey.

9.      It was further part of the scheme that on or about September 27, 2020, Mortgage Lender-1 wired the mortgage proceeds via interstate wire, through the Fedwire system, to Settlement Company-1's escrow account.

10.      It was further part of the scheme that Settlement Company-1 wired approximately $500,000 of the Division Avenue mortgage loan from its escrow

account to a bank account at Bank-1 in the name of BSD Realty Holdings, Inc., which was controlled by defendant SPITZER, as set forth in the following table:

| Approximate Date | Approximate Amount | Description |
|---|---|---|
| 9/27/2019 | $400,000.00 | Interstate wire, sent through the Fedwire system, from Settlement Company-1's escrow account to the BSD Realty Holdings, Inc. bank account. |
| 9/27/2019 | $100,000.00 | Interstate wire, sent through the Fedwire system, from Settlement Company-1's escrow account to the BSD Realty Holdings, Inc. bank account. |

11.    It was further part of the scheme that Settlement Company-1 applied approximately $420,500 of the Division Avenue proceeds towards defendant SPITZER's purchase of another real estate property.

12.    It was further part of the scheme that Individual-2 did not authorize defendant SPITZER to obtain a $997,500 mortgage loan secured by the Division Avenue Property.

13.    It was further part of the scheme that Mortgage Lender-1 would not have funded this mortgage loan had it known that Individual-2 did not authorize defendant SPITZER to obtain a $997,500 mortgage loan secured by the Division Avenue Property.

14.    It was further part of the scheme that defendant SPITZER caused the Division Avenue mortgage loan to default by not making the required payments.

## Execution of the Scheme to Defraud

15.    For the purpose of executing and attempting to execute the scheme and artifice to defraud, in Ocean County in the District of New Jersey, Kings County in the Eastern District of New York, and elsewhere, defendant

### ARTHUR SPITZER

did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, including a Fedwire funds transfer on or about September 27, 2019 from the bank account of Settlement Company-1, through processing facilities in New Jersey and Texas, to the bank account of BSD Realty Holdings Inc.

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 3
### (Wire Fraud)
*(ISM Holdings – Company-1 loan)*

1.     Paragraph 1 of Count 1 of the Indictment is incorporated as if set forth in full herein.

2.     At all times relevant to the Indictment:

    a.     ISM Holdings LLC was a New Jersey company.

    b.     The "ISM Properties" were a set of 15 residential buildings located in Sicklerville, New Jersey, Newark, New Jersey, and Irvington, New Jersey.

    c.     Company-1 was a New Jersey company owned by Individual-3.

### The Scheme to Defraud

3.     In or about December 2019, in Camden, Essex, and Ocean Counties in the District of New Jersey, and elsewhere, defendant

### ARTHUR SPITZER

did knowingly and intentionally devise and execute a scheme and artifice to defraud Individual-4, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice was in substance as set forth below.

### Object of the Scheme

4.     The object of the scheme was for defendant ARTHUR SPITZER to financially enrich himself and satisfy outstanding debts by fraudulently obtaining a mortgage loan secured by real estate properties that he did not have authority to use as collateral for the mortgage loan.

## Manner and Means of the Scheme

5.     It was part of the scheme that in or around March 2019, ISM Holdings LLC purchased the ISM Properties.  The purchase price of approximately $3,900,000 was comprised of approximately $875,000 from Individual-4 and approximately $3,100,000 in mortgage loans.

6.     It was further part of the scheme that the operating agreement for ISM Holdings LLC provided that the only members of ISM Holdings LLC were Individual-4 and Individual-5.  Under the terms of the operating agreement, Individual-4's consent was needed before any member could assign his membership interest and before obtaining any mortgage loan secured by the ISM Properties.

7.     It was further part of the scheme that in or around December 2019, defendant SPITZER, purportedly acting as managing member of ISM Holdings LLC, obtained a mortgage loan of approximately $400,000 from Individual-3, secured by the ISM Properties.  Documents reflecting a $400,000 mortgage loan between Company-1 and ISM Holdings LLC were notarized and recorded by a Settlement Company-1 employee in New Jersey.

8.     It was further part of the scheme that on or about December 26, 2019, Settlement Company-1 deposited into its escrow account a check in the approximate amount of $388,000 with the notation "loan spitzer."  Settlement Company-1 then wired approximately $365,000 of the loan proceeds from its escrow account to a bank account in the name of BSD Realty Holdings, Inc., which was controlled by defendant SPITZER as follows:

| Approximate Date | Approximate Amount | Description |
|---|---|---|
| 12/26/2019 | $42,938.79 | Interstate wire, sent through the Fedwire system, from Settlement Company-1's escrow account to the BSD Realty Holdings, Inc. bank account. |
| 12/26/2019 | $57,350.04 | Interstate wire, sent through the Fedwire system, from Settlement Company-1's escrow account to the BSD Realty Holdings, Inc. bank account. |
| 12/27/2019 | $265,000.00 | Interstate wire, sent through the Fedwire system, from Settlement Company-1's escrow account to the BSD Realty Holdings, Inc. bank account. |

9.  It was further part of the scheme that Individual-4 was not aware of defendant SPITZER's actions and did not authorize defendant SPITZER to obtain a mortgage secured by the ISM Properties.

10.  It was further part of the scheme that Company-1 would not have funded this mortgage loan had it known that Individual-4's authorization was required for ISM Holdings to obtain a mortgage loan and that Individual-4 did not know about or authorize defendant Spitzer to obtain this mortgage loan.

## Execution of the Scheme to Defraud

11.  For the purpose of executing and attempting to execute the scheme and artifice to defraud, in Camden, Essex, and Ocean Counties in the District of New Jersey, and elsewhere, defendant

## ARTHUR SPITZER

did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, including a Fedwire funds transfer on or about December 27, 2019 from the

bank account of Settlement Company-1, through processing facilities in New Jersey and Texas, to the bank account of BSD Realty Holdings Inc.

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 4
(Wire Fraud)
*(ISM Holdings – Refinance)*

1.     Paragraph 1 of Count 1 of the Indictment, paragraph 2 of Count 2 of the Indictment, and paragraphs 1 through 10 of Count 3 of the Indictment are incorporated as if set forth in full herein.

2.     At all times relevant to the Indictment:

a.     Mortgage Originator-2 was a mortgage originator that originated loans for Mortgage Lender-1.

b.     Settlement Company-2 was a title and real estate settlement company located in Lakewood, New Jersey.

### The Scheme to Defraud

3.     In or about February 2020, in Camden, Essex, and Ocean Counties in the District of New Jersey, and elsewhere, defendant

### ARTHUR SPITZER

did knowingly and intentionally devise and execute a scheme and artifice to defraud Individual-4 and Mortgage Lender-1, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice was in substance as set forth below.

### Object of the Scheme

4.     The object of the scheme was for defendant ARTHUR SPITZER to financially enrich himself and satisfy outstanding debts by fraudulently obtaining mortgage loans secured by real estate properties that he did not have authority to use as collateral for the mortgage loans.

18

### Manner and Means of the Scheme

5.   It was part of the scheme that defendant SPITZER, using Individual-2's name, applied for mortgage loans secured by the ISM Properties.

6.   It was further part of the scheme that defendant SPITZER used a fake document purporting to assign Individual-4's and Individual-5's membership in ISM Holdings LLC to Individual-2 and defendant SPITZER. The document purporting to transfer membership to Individual-2 and defendant SPITZER contained the forged signature of one of the actual LLC members, Individual-4.

7.   It was further part of the scheme that in or around February 2020, defendant SPITZER caused Individual-2 to sign documents enabling ISM Holdings LLC to obtain mortgage loans totaling approximately $4,000,000 through mortgage originator Mortgage Originator-2 and Mortgage Lender-1. These mortgage loans were secured by the ISM Properties. At the time he signed these documents, Individual-2 was not aware of the nature of the documents or that he was signing documents to obtain a mortgage loan on a property that neither he nor defendant SPITZER legitimately owned.

8.   It was further part of the scheme that Settlement Company-2 served as settlement agent for these mortgage loans. Settlement Company-2 employees were located in New Jersey when they worked on the ISM Holdings transaction.

9.   It was further part of the scheme that, after paying off the existing mortgage loans on the ISM Properties, Settlement Company-2 wired approximately $370,000 of the mortgage loan proceeds from its escrow account to a bank account

at Bank-1 in the name of BSD Realty Holdings, Inc., which was controlled by

defendant SPITZER as follows:

| Approximate Date | Approximate Amount | Description |
|---|---|---|
| 2/25/2020 | $200,000.00 | Interstate wire, sent through the Fedwire system, from Settlement Company-2's escrow account to the BSD Realty Holdings, Inc. bank account. |
| 2/26/2020 | $20,000.00 | Interstate wire, sent through the Fedwire system, from Settlement Company-2's escrow account to the BSD Realty Holdings, Inc. bank account. |
| 2/26/2020 | $50,000.00 | Interstate wire, sent through the Fedwire system, from Settlement Company-2's escrow account to the BSD Realty Holdings, Inc. bank account. |
| 2/27/2020 | $100,000.00 | Interstate wire, sent through the Fedwire system, from Settlement Company-2's escrow account to the BSD Realty Holdings, Inc. bank account. |

10.     It was further part of the scheme that Individual-4 did not actually

transfer membership of ISM Holdings LLC to defendant SPITZER and Individual-2,

and was not aware of, and did not authorize defendant SPITZER to obtain,

mortgage loans secured by the ISM Properties.

11.     It was further part of the scheme that Mortgage Lender-1 would not

have funded these mortgage loans had it known that Individual-4's signature on the

purported assignment was forged and that Individual-4 did not authorize defendant

SPITZER to obtain mortgage loans secured by the ISM Properties.

12.     It was further part of the scheme that defendant SPITZER caused the

ISM Properties mortgage loans to default by not making the required payments.

### Execution of the Scheme to Defraud

13.    For the purpose of executing and attempting to execute the scheme and artifice to defraud, in Camden, Essex, and Ocean Counties in the District of New Jersey, and elsewhere, defendant

### ARTHUR SPITZER

did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, including a Fedwire funds transfer on or about February 25, 2020, from the bank account of Settlement Company-2, through processing facilities in New Jersey and Texas, to the bank account of BSD Realty Holdings Inc.

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 5
(Aggravated Identity Theft)
*(ISM Properties)*

1.    Paragraph 1 of Count 1 of the Indictment, paragraphs 1 through 11 of Count 3 of the Indictment, and paragraphs 1 through 13 of Count 4 of the Indictment are incorporated as if set forth in full herein.

2.    In or about February 2020, in Camden, Essex, and Ocean Counties in the District of New Jersey, and elsewhere, defendant

### ARTHUR SPITZER

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, that is, the name and signature of Individual-4, during and in relation to a felony violation of provisions contained in Chapter 63 of Title 18, namely, wire fraud, contrary to 18 U.S.C. § 1343 as charged in Count 4 of this Indictment, knowing that the means of identification belonged to said other person.

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

**COUNT 6**
(Conspiracy to Commit Wire and Bank Fraud)
*(Malcolm X Properties)*

1.     Paragraph 1 of Count 1 of the Indictment is incorporated as if set forth in full herein.

2.     At all times relevant to this Indictment:

a.     Defendant MENDEL DEUTSCH was a resident of Toms River, New Jersey.

b.     Defendant JOSHUA FELDBERGER was a resident of Lakewood, New Jersey.  Defendant JOSHUA FELDBERGER owned Settlement Company-2, a title and real estate settlement company located in Lakewood, New Jersey.

c.     306 Malcolm NY LLC was a New York entity controlled by defendant DEUTSCH (the "DEUTSCH LLC").

d.     The "Malcolm X Properties" were three mixed-use commercial and residential buildings located on Malcolm X Boulevard in Brooklyn, New York.

e.     Bank-2 was engaged in the business of making mortgage loans and therefore was a "financial institution" within the meaning of Title 18, United States Code, Section 20.

f.     Bank-3 was a "financial institution" within the meaning of Title 18, United States Code, Section 20.

g.     Deutsche Equity LLC was a New York company controlled by defendant DEUTSCH.  Deutsche Equity LLC had a bank account at Bank-3, whose sole signatory was defendant DEUTSCH.

h.    Company-2 was a New York limited liability company.

i.    Individual-6 was a resident of New York.

### The Conspiracy

3.    From in or about November 2019 through in or about July 2020, in

Ocean County in the District of New Jersey, and elsewhere, defendants

### ARTHUR SPITZER, MENDEL DEUTSCH, and JOSHUA FELDBERGER

did knowingly and intentionally conspire to commit certain offenses, namely:

a.  To devise a scheme and artifice to defraud Company-2 and Bank-2, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing and attempting to execute such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343; and

b.  To execute and attempt to execute a scheme and artifice to defraud a financial institution, Bank-2, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, Bank-2, by means of materially false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344.

### Object of the Conspiracy

4.    The object of the conspiracy was for defendants ARTHUR SPITZER,

MENDEL DEUTSCH, and JOSHUA FELDBERGER to financially enrich

themselves and satisfy outstanding debts by fraudulently obtaining a $4,500,000

mortgage loan from Bank-2 that was secured by the Malcolm X Properties.

### Manner and Means of the Conspiracy

5.    It was part of the conspiracy that in or around July 2019, 306A

Malcolm X Blvd LLC, 306 Malcolm X Blvd LLC, and 308 Malcolm X Blvd LLC (the

"Malcolm X Blvd LLCs"), purchased the Malcolm X Properties.  No mortgage loan was obtained in connection with the purchase.

6.     It was further part of the conspiracy that the operating agreements for the Malcolm X Blvd LLCs provided that the sole member of each entity was Company-2.  The operating agreements further provided that Individual-6 was an authorized signatory who was authorized only to execute documents in connection with the July 2019 purchase of the Malcolm X Properties.

7.     It was further part of the conspiracy that between in or about November 2019 and in or about March 2020, defendants ARTHUR SPITZER and MENDEL DEUTSCH engaged in discussions with representatives of the Malcolm X Blvd LLCs about purchasing the Malcolm X Properties from the Malcolm X Blvd LLCs.  These discussions did not result in any agreement to sell the Malcolm X Properties to defendants SPITZER and DEUTSCH.

8.     It was further part of the conspiracy that notwithstanding the lack of agreement to sell the Malcolm X Properties to defendants SPITZER and DEUTSCH, defendants SPITZER and DEUTSCH worked with defendant JOSHUA FELDBERGER to devise and execute a scheme to obtain a mortgage loan secured by the Malcolm X Properties by making it appear to Bank-2 as if defendant SPITZER actually owned the Malcolm X Properties and that defendant SPITZER had agreed to sell the Malcolm X Properties to an entity controlled by defendant DEUTSCH (the DEUTSCH LLC).

9.     It was further part of the conspiracy that defendant MENDEL DEUTSCH, through the DEUTSCH LLC, applied for a mortgage loan from Bank-2 in connection with his purported purchase of the Malcolm X Properties.

10.     It was further part of the conspiracy that defendants SPITZER and DEUTSCH engaged Settlement Company-2 to be the title and settlement company for the transaction conveying the Malcolm X Properties to the DEUTSCH LLC and in which defendant DEUTSCH obtained a mortgage loan from Bank-2.  Defendant FELDBERGER oversaw Settlement Company-2's activities in connection with this transaction.  Defendant FELDBERGER and other Settlement Company-2 employees were located in New Jersey when they worked on the Malcolm X transaction.

11.     It was further part of the conspiracy that defendants SPITZER and DEUTSCH made or caused to be made material misrepresentations to Bank-2 in connection with defendant DEUTSCH's application for a mortgage loan secured by the Malcolm X Properties.  For example, between in or about January 2020 and in or about June 2020, defendant FELDBERGER created and caused to be created letters stating that defendant DEUTSCH already had deposited sizable funds into Settlement Company-2's escrow account to be used towards the purchase of real estate properties.  Defendants SPITZER and DEUTSCH caused these letters to be sent to Bank-2 to support defendant DEUTSCH's application for a mortgage loan secured by the Malcolm X Properties.  In fact, defendant DEUTSCH had not deposited the stated funds into Settlement Company-2's escrow account.

12.     It was further part of the conspiracy that in or about June 2020, defendant SPITZER signed documents on behalf of the Malcolm X Blvd LLCs to obtain a short-term loan of more than $1,000,000.  The loan documents were signed by defendant SPITZER on behalf of the Malcolm X Blvd LLCs even though defendant SPITZER was not a member of the Malcolm X Blvd LLCs and had no authority to borrow money on behalf of the Malcolm X Blvd LLCs.  The short-term loan documents were notarized by defendant FELDBERGER.

13.     It was further part of the conspiracy that defendants SPITZER, DEUTSCH, and FELDBERGER caused to be created, and used, documents containing the forged signature of Individual-6 to facilitate the transaction:

a.  On or about June 11, 2020, defendant DEUTSCH emailed a "time of essence" letter to his mortgage broker, which was then forwarded to Bank-2.  The "time of essence" letter stated that the seller of the Malcolm X Properties was ready to close the sale of the Malcolm X Properties to defendant DEUTSCH.  The "time of essence" letter was purportedly signed by Individual-6 but was not actually signed by Individual-6.

b.  The defendants used a document, dated August 2019, purportedly assigning membership in the Malcolm X Blvd LLCs from Individual-6 to defendant SPITZER (the "Fake Assignment").  The Fake Assignment made it appear as if defendant SPITZER owned the Malcolm X Properties and therefore could "sell" the Malcolm X Properties to defendant DEUTSCH.  The Fake Assignment was not

actually signed by Individual-6 and was created not in August

2019, but rather, on a date after the Malcolm X transaction already

had closed.

14.     It was further part of the conspiracy that according to the HUD-1

Settlement Statement, the purchase price for the purported sale of the Malcolm X

Properties from defendant SPITZER to defendant DEUTSCH was $6,000,000, the

amount of the loan from Bank-2 was $4,500,000, and defendant DEUTSCH was

required to bring approximately $2,300,000 to the closing.

15.     It was further part of the conspiracy that on or about June 25, 2020,

defendant FELDBERGER caused a Settlement Company-2 employee to falsely state

in an email sent to a representative of Bank-2 that defendant DEUTSCH already

had provided the required funds to Settlement Company-2.  Bank-2 then wired the

loan proceeds of approximately $4,061,368.47 to Settlement Company-2 on or about

June 25, 2020.  In fact, Settlement Company-2 had not received the required funds

from defendant DEUTSCH on June 25, 2020.

16.     It was further part of the conspiracy that after Settlement Company-2

received the mortgage proceeds from Bank-2, the defendants engaged in a series of

monetary transactions that had the effect of allowing defendants SPITZER and

DEUTSCH to purchase the Malcolm X Properties and obtain the Bank-2 mortgage

loan without using any of their own money, as set forth below:

    a.  On or about June 26, 2020, defendant FELDBERGER wired

        approximately $1,000,000 of the Bank-2 mortgage proceeds to

        defendant SPITZER's company, BSD Realty Holdings, Inc.  These

funds were then wired from BSD Realty Holdings, Inc. to defendant

DEUTSCH's company, Deutsche Equity, which then sent them by

wire and check back to Settlement Company-2 as a portion of

defendant DEUTSCH's approximately $2,300,000 down payment

for the same transaction for which the mortgage loan was being

obtained.  Specifically, defendants SPITZER, DEUTSCH, and

FELDBERGER engaged in the following monetary transactions:

| Approximate Date | Approximate Amount | Description |
|---|---|---|
| 6/26/2020 | $800,000 and $200,000 | Interstate wire, sent through the Fedwire system, from Settlement Company-2's escrow account at Bank-1 to defendant SPITZER's BSD Realty Holdings bank account at Bank-1. |
| 7/2/2020 | $500,000, $300,000, and $200,000 | Interstate wire, sent through the Fedwire system, from defendant SPITZER's BSD Realty Holdings bank account at Bank-1 to defendant DEUTSCH's Deutsche Equity bank account at Bank-3. |
| 7/2/2020 | $300,000 and $200,000 | Interstate wire, sent through the Fedwire system, from defendant DEUTSCH's Deutsche Equity bank account at Bank-3 to Settlement Company-2's escrow account at Bank-1. |
| 7/2/2020 | $411,348,80 | Check from defendant DEUTSCH's Deutsche Equity bank account at Bank-3, signed by defendant DEUTSCH, and deposited into Settlement Company-2's escrow account at Bank-1. |

b.  On or about July 2, 2020, defendants SPITZER and DEUTSCH

caused Individual-7 to wire the balance of defendant DEUTSCH's

down payment—approximately $1,400,000—to Settlement

Company-2.  On or about July 2, 2020, defendant FELDBERGER

wired a portion of the Bank-2 mortgage proceeds to BSD Realty

Holdings, Inc.  Defendant SPITZER subsequently used these

mortgage proceeds to repay Individual-7.  Specifically, defendants

SPITZER, DEUTSCH, and FELDBERGER engaged in the

following monetary transactions:

| Approximate Date | Approximate Amount | Description |
|---|---|---|
| 7/2/2020 | $1,400,000 | Interstate wire, sent through the Fedwire system, from Individual-7's bank account at Bank-3 to Settlement Company-2's escrow account at Bank-1. |
| 7/2/2020 | $1,000,000 and $1,250,000 | Interstate wires, sent through the Fedwire system, from Settlement Company-2's escrow account at Bank-1 to defendant SPITZER's BSD Realty Holdings bank account at Bank-1. |
| 7/3/2020; 7/6/2020; 7/24/2020; 7/28/2020 | $250,000; $500,000; $50,000; $75,000 | Interstate wires, sent through the Fedwire system, from defendant SPITZER's BSD Realty Holdings bank account at Bank-1 to Individual-7's bank account at Bank-3. |

17.    It was further part of the conspiracy that the proceeds of the Bank-2

mortgage loan were disbursed for the benefit of defendants SPITZER, DEUTSCH,

and FELDBERGER.  As described above, a significant portion of the Bank-2

mortgage proceeds were used to fund defendant DEUTSCH's down payment.

Approximately $100,000 of the proceeds were disbursed to a relative of defendant

FELDBERGER to repay a loan he had made to defendant SPITZER.  Most of the

remaining loan proceeds were disbursed to BSD Realty Holdings Inc. and used for

defendant SPITZER's benefit.

18.    It was further part of the conspiracy that defendants SPITZER,

DEUTSCH and FELDBERGER signed the HUD-1 Settlement Statement for the

Malcolm X transaction even though it did not disclose the material facts that more than $1,000,000 of the funds were being disbursed to pay off the short-term loan, that defendant DEUTSCH did not actually provide the required funds to close the transaction on the closing date, and that defendant SPITZER did not actually own the Malcolm X Properties.  Bank-2 would not have approved and funded this mortgage loan had it known these facts.

19.    It was further part of the conspiracy that defendants SPITZER and DEUTSCH caused the Bank-2 mortgage loan to default by failing to make the required payments.

In violation of Title 18, United States Code, Section 1349.

## COUNT 7
(Bank Fraud)
*(Malcolm X Properties)*

1.     Paragraph 1 of Count 1 of the Indictment and paragraphs 1 through 19 of Count 6 of the Indictment are incorporated as if set forth in full herein.

2.     From in or about November 2019 through in or about July 2020, in Ocean County in the District of New Jersey, and elsewhere, defendants

**ARTHUR SPITZER, MENDEL DEUTSCH,
and JOSHUA FELDBERGER**

did knowingly and intentionally execute and attempt to execute a scheme and artifice to defraud a financial institution, Bank-2, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, Bank-2, by means of materially false and fraudulent pretenses, representations, and promises, namely by causing Bank-2 to transmit approximately $4,061,368.47 to Settlement Company-2 on or about June 25, 2020.

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT 8
### (Wire Fraud)
#### (*Malcolm X Properties*)

1.    Paragraph 1 of Count 1 of the Indictment and paragraphs 1 through 19 of Count 6 of the Indictment are incorporated as if set forth in full herein.

2.    From in or about November 2019 through in or about July 2020, in Ocean County in the District of New Jersey, and elsewhere, defendants

### ARTHUR SPITZER, MENDEL DEUTSCH, and JOSHUA FELDBERGER

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud, and aid and abet the scheme and artifice to defraud Company-2 and Bank-2, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for purposes of executing and attempting to execute such scheme and artifice to defraud, did knowingly and intentionally transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, including a Fedwire funds transfer on or about June 25, 2020, from Bank-2, through processing facilities in New Jersey and Texas, to the bank account of Settlement Company-2.

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 9
### (Aggravated Identity Theft)
### *(Malcolm X Properties)*

1.    Paragraph 1 of Count 1 of the Indictment and paragraphs 1 through 19 of Count 6 of the Indictment are incorporated as if set forth in full herein.

2.    From in or about June 2020 through in or about July 2020, in Ocean County in the District of New Jersey, and elsewhere, defendants

**ARTHUR SPITZER, MENDEL DEUTSCH,
and JOSHUA FELDBERGER**

did knowingly transfer, possess, and use, without lawful authority, means of identification of another person, that is, the name and signature of Individual-6, during an in relation to felony violations of provisions contained in Chapter 63 of Title 18, namely, bank and wire fraud conspiracy, bank fraud, and wire fraud, contrary to 18 U.S.C. §§ 1343, 1344, and 1349, as charged in Counts 6, 7, and 8 of this Indictment, knowing that the means of identification belonged to said other person.

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## COUNT 10
### (False Statement)
### (*Malcolm X Properties*)

1.    Paragraph 1 of Count 1 of the Indictment and paragraphs 1 through 19 of Count 6 of the Indictment are incorporated as if set forth in full herein.

2.    In or about June 2020, in Ocean County in the District of New Jersey, and elsewhere, defendants

### ARTHUR SPITZER, MENDEL DEUTSCH, and JOSHUA FELDBERGER

did knowingly make and cause to be made a false statement and report for the purpose of influencing Bank-2, an institution the accounts of which were insured by the Federal Deposit Insurance Corporation; namely, the defendants signed and caused to be submitted to Bank-2, in connection with a $4,500,000 mortgage loan from Bank-2 related to a purported transfer of the Malcolm X Properties, a HUD-1 Settlement Statement that (a) omitted the fact that a portion of the mortgage loan proceeds were being used to pay off an existing loan; (b) falsely stated that defendant DEUTSCH had provided approximately $2,300,000 of his own, non-mortgage loan funds at closing; and (c) falsely implied that defendant SPITZER was authorized to sell the Malcolm X Properties.

In violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT 11
### (Wire Fraud)
### *(Company-3 loan)*

1.     Paragraph 1 of Count 1 of the Indictment and paragraphs 1 through 19 of Count 6 of the Indictment are incorporated as if set forth in full herein.

2.     At all times relevant to this Indictment:

a.     Individual-8 was a resident of Brooklyn, New York.  Individual-8 owned and resided in a building located on Bedford Avenue in Brooklyn, New York (the "Bedford Avenue Property").

b.     The Bedford Avenue Property was owned by a limited liability company (the "Bedford Avenue LLC").  The managing members of the Bedford Avenue LLC were Individual-8 and Individual-8's spouse.

c.     Company-3 was a Florida company.

d.     Settlement Company-3 was a title and real estate settlement company located in Brooklyn, New York.

### The Scheme

3.     From in or about August 2020 through in or about September 2020, in Kings County in the Eastern District of New York, the District of New Jersey, and elsewhere, defendant

### ARTHUR SPITZER

did knowingly and intentionally devise and execute a scheme and artifice to defraud Company-2, Company-3, and Individual-8, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice was in substance as set forth below.

36

## Object of the Scheme

4.     The object of the scheme was for defendant ARTHUR SPITZER to financially enrich himself and satisfy outstanding debts by fraudulently obtaining a mortgage loan secured by real estate properties that he did not have authority to use as collateral for the mortgage loan.

## Manner and Means of the Scheme

5.     It was part of the scheme that in or about July 2020, a representative of Company-2 learned that the Malcolm X Properties had been conveyed to defendant DEUTSCH without authorization and that the unauthorized Bank-2 mortgage loan had been obtained.  In or about August 2020, defendant DEUTSCH assigned his interest in the DEUTSCH LLC to Company-2.

6.     It was further part of the scheme that in or about September 2020, defendant SPITZER, purportedly acting as an authorized signatory of the DEUTSCH LLC and the Bedford Avenue LLC, obtained a loan of approximately $1,000,000 from Company-3 that was secured by the Malcolm X Properties and the Bedford Avenue Property.

7.     It was further part of the scheme that Settlement Company-3 served as settlement agent for the Company-3 mortgage transaction.  On or about September 29, 2020, approximately $940,000 was wired in interstate commerce using the Fedwire system, from a bank account controlled by Company-3 to Settlement Company-3's escrow account.

8.     It was further part of the scheme that the Company-3 loan proceeds were disbursed by interstate wires, sent through the Fedwire system, for defendant

SPITZER's benefit or to satisfy defendant SPITZER's outstanding debts. None of the mortgage proceeds were disbursed to Individual-8 or Company-2.

9.    It was further part of the scheme that defendant SPITZER was not a member of the DEUTSCH LLC or the Bedford Avenue LLC, and neither Individual-8 nor Company-2 authorized defendant SPITZER to obtain a mortgage loan secured by the Malcolm X Properties and the Bedford Avenue Property.

10.    It was further part of the scheme that Company-3 would not have funded this mortgage loans had it known that Individual-8 and Company-2 did not authorize defendant SPITZER to obtain a mortgage loan secured by these properties.

11.    It was further part of the scheme that defendant SPITZER caused the Company-3 mortgage loan to default by not making the required payments.

### Execution of the Scheme to Defraud

12.    For the purpose of executing and attempting to execute the scheme and artifice to defraud, in Ocean County in the District of New Jersey, Kings County in the Eastern District of New York, and elsewhere, defendant

### ARTHUR SPITZER

did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, including a Fedwire funds transfer on or about September 29, 2020 from the bank account of Company-3, through processing facilities in New Jersey and Texas, to the bank account of Settlement Company-3.

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 12-19
### (Money Laundering by Transacting in Criminal Proceeds)
#### *(Fraudulent mortgage proceeds - Spitzer)*

1.      Counts 1 through 11 of the Indictment are incorporated as if set forth in full herein.

2.      At all times relevant to this Indictment:

      a.      Company-4 was a New York limited liability company.

      b.      Company-5 was a New Jersey limited liability company.

      c.      Bank-4 was a "financial institution" within the meaning of Title 18, United States Code, Section 20.

3.      On or about the dates set forth in the table below, in the District of New Jersey and elsewhere, the defendant,

### ARTHUR SPITZER,

did knowingly engage and attempt to engage in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, as set forth in the table below, such property having been derived from a specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343, bank fraud in violation of Title 18, United States Code, Section 1344, and bank and wire fraud conspiracy in violation of Title 18, United States Code, Section 1349, each monetary transaction constituting a separate count:

| Count | Approximate Date | Description of Monetary Transaction |
|---|---|---|
| 12 | 8/29/2019 | $50,000.00 interstate wire, sent through the Fedwire system, consisting of proceeds from the 56th Street mortgage loan charged in Count 1 of the Indictment, |

| | | |
|---|---|---|
| | | from defendant SPITZER's BSD Realty Holdings bank account at Bank-1 to defendant DEUTSCH's Deutsche Equity bank account at Bank-3. |
| 13 | 8/29/2019 | $201,000.00 interstate wire, sent through the Fedwire system, consisting of proceeds from the 56th Street mortgage loan charged in Count 1 of the Indictment, from defendant SPITZER's BSD Realty Holdings bank account at Bank-1 to a bank account controlled by Individual-7 at Bank-3. |
| 14 | 9/27/2019 | $300,000.00 interstate wire, sent through the Fedwire system, consisting of proceeds from the Division Avenue mortgage loan charged in Count 2 of the Indictment, from defendant SPITZER's BSD Realty Holdings bank account at Bank-1 to a bank account in the name of Company-4 at Bank-3. |
| 15 | 12/27/2019 | $130,000.00 interstate wire, sent through the Fedwire system, consisting of proceeds from the ISM Holdings LLC mortgage loan charged in Count 3 of the Indictment, from defendant SPITZER's BSD Realty Holdings bank account at Bank-1 to a bank account in the name of Company-5 at Bank-1. |
| 16 | 2/25/2020 | $45,500.00 interstate wire, sent through the Fedwire system, consisting of proceeds from the ISM Holdings LLC mortgage loan charged in Count 4 of the Indictment, from defendant SPITZER's BSD Realty Holdings bank account at Bank-1 to a bank account in the name of Company-5 at Bank-1. |
| 17 | 2/27/2020 | $100,000.00 interstate wire, sent through the Fedwire system, consisting of proceeds from the ISM Holdings LLC mortgage loan charged in Count 4 of the Indictment, from defendant SPITZER's BSD Realty Holdings bank account at Bank-1 to defendant DEUTSCH's Deutsche Equity bank account at Bank-3. |
| 18 | 7/2/2020 | $100,000.00 interstate wire, sent through the Fedwire system, consisting of proceeds from the Malcolm X Properties mortgage loan charged in Counts 6-10 of the Indictment, from defendant SPITZER's BSD Realty Holdings bank account at Bank-1 to the Company-1 bank account at Bank-4. |

| 19 | 7/6/2020 | $100,000.00 interstate wire, sent through the Fedwire system, consisting of proceeds from the Malcolm X Properties mortgage loan charged in Counts 6-10 of the Indictment, from defendant SPITZER's BSD Realty Holdings bank account at Bank-1 to the Company-1 bank account at Bank-4. |

In violation of Title 18, United States Code, Sections 1957(a) and 2.

## COUNTS 20-21
### (Wire Fraud)
#### *(EIDL loans - Spitzer)*

1.      Paragraphs 1 through 13 of Count 1 of the Indictment are incorporated as if set forth in full herein.

2.      At all times relevant to the Indictment:

a.      Bank-5 was a "financial institution" within the meaning of Title 18, United States Code, Section 20.

b.      The U.S. Small Business Administration ("SBA") was an independent agency of the federal government created to aid, counsel, assist, and protect the interests of small business concerns, preserve free competitive enterprise, and maintain and strengthen the overall economy of the United States.

c.      The EIDL program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

d.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 and was designed to provide emergency financial assistance to millions of Americans suffering economic effects caused by the COVID-19 pandemic.

e.      The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses that were experiencing substantial financial disruption due to the COVID-19 pandemic.

f.      To obtain an EIDL, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the

number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In addition, the business entity must have been in operation on February 1, 2020.

g. The amount of the EIDL was determined based, in part, on the information provided by the applicant regarding the revenue, employees, and cost of goods of the business. The SBA directly issued any funds disbursed under an EIDL to the applicant business. A business was permitted to use EIDL funds for payroll expenses, sick leave, production costs, and business obligations such as debts, rent, and mortgage payments.

### The Scheme

3.    From in or about June 2020 through at least as late as November 2020, defendant SPITZER devised and intended to devise a scheme to defraud the SBA, and to obtain federal COVID-19 emergency relief monies by means of materially false and fraudulent pretenses, representations and promises.

### Object of the Scheme

4.    The object of the scheme was for defendant SPITZER to financially enrich himself by obtaining EIDL loans that were intended for small businesses distressed by the COVID-19 pandemic, through the submission of fraudulent loan applications to the SBA that included false statements about the applicant companies' gross revenues, cost of goods sold, and lost rents.

### Manner and Means of the Scheme

5.    It was part of the scheme that defendant SPITZER submitted and caused to be submitted approximately two dozen EIDL loan applications. The loan

applications contained materially false and fraudulent information about one or more of the following data points: the company's number of employees, gross revenues, cost of goods sold, and lost rents due to the COVID-19 pandemic.

6.    It was further part of the scheme that based on the materially false information, the SBA approved approximately 15 EIDL loans.

7.    It was further part of the scheme that some of the EIDL applications or loan agreements were electronically signed and submitted to the SBA from New Jersey.

8.    It was further part of the scheme that after approving the EIDLs, the SBA disbursed the loan proceeds into bank accounts maintained by defendant SPITZER.  Many of the EIDL loans that the SBA approved based on loan applications that defendant SPITZER caused to be submitted were funded via Automated Clearing House (ACH) payments sent from the SBA's facility in a state other than New Jersey, through a facility in New Jersey, to bank accounts controlled by defendant SPITZER.

9.    It was further part of the scheme that as a result of his fraudulent applications, defendant SPITZER unlawfully obtained more than $1,500,000 in federal COVID-19 emergency relief money.

*56th Street LLC EIDL Loan*

10.    It was further part of the scheme that on or about August 9, 2020, defendant SPITZER applied for an EIDL loan on behalf of the 56th Street LLC.  The 56th Street EIDL application stated that the 56th Street LLC had 8 employees, gross

revenues of $749,875 for the 12 months prior to the disaster, and lost rents due to the disaster of $690,120.

11.    It was further part of the scheme that the information defendant SPITZER caused to be provided to the SBA on the 56th Street EIDL application was false and fraudulent. The 56th Street LLC was a company formed by defendant SPITZER in or around August 2019 to hold the 56th Street Properties and to apply for unauthorized mortgages secured by the 56th Street Properties. The 56th Street LLC did not have any employees, had no revenue (apart from the fraudulent mortgage proceeds), and no rents were ever paid to the 56th Street LLC. The 56th Street LLC bank account at Bank-5 was not opened until July 23, 2020, shortly before defendant SPITZER applied for the EIDL loan.

12.    It was further part of the scheme that in or around November 2020, based on the fraudulent application, SBA approved the 56th Street EIDL loan in the amount of $150,000.

13.    It was further part of the scheme that in or around November 2020, in Jersey City, New Jersey, defendant SPITZER electronically signed, or caused to be electronically signed, a Loan Authorization and Agreement on behalf of the 56th Street LLC certifying that "[a]ll representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan."

14.    It was further part of the scheme that in or around November 2020, the SBA disbursed approximately $149,900 into a Bank-5 account in the name of the 56th Street LLC, which was controlled by defendant SPITZER.

### *138 Nobility LLC EIDL Loan*

15.    It was further part of the scheme that on or about August 17, 2020, defendant SPITZER applied for an EIDL loan on behalf of 138 Nobility LLC.  The 138 Nobility LLC EIDL application stated that 138 Nobility LLC had 3 employees, gross revenues of $185,500 for the 12 months prior to the disaster, and lost rents due to the disaster of $163,200.

16.    It was further part of the scheme that the information that defendant SPITZER caused to be provided to the SBA on the 138 Nobility LLC EIDL application was false and fraudulent.  138 Nobility LLC was a company formed by defendant SPITZER in or around August 2019 to hold a single-family residence in Toms River, New Jersey.  138 Nobility LLC did not have any employees, had no revenue, and no rents were ever paid to 138 Nobility LLC.  The 138 Nobility LLC bank account at Bank-5 was not opened until July 23, 2020, shortly before applying for the EIDL loan.

17.    It was further part of the scheme that in or around November 2020, based on the fraudulent application, SBA approved the 138 Nobility LLC EIDL loan in the amount of $150,000.

18.    It was further part of the scheme that in or around November 2020, in Jersey City, New Jersey, defendant SPITZER electronically signed, or caused to be electronically signed, a Loan Authorization and Agreement on behalf of 138 Nobility LLC certifying that "[a]ll representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan."

19.    It was further part of the scheme that in or around November 2020, the SBA disbursed approximately $149,900 into a Bank-5 account in the name of 138 Nobility LLC, which was controlled by defendant SPITZER.

### Execution of the Scheme

20.    On or about the dates set forth below, in the District of New Jersey and elsewhere, defendant,

### ARTHUR SPITZER,

for the purpose of executing the scheme described above, transmitted and caused to be transmitted by means of wire communications in interstate commerce the writings, signs, and signals described below for each count, each transmission constituting a separate count:

| Count | Approximate Date | Description of Interstate Wire |
|-------|------------------|-------------------------------|
| 20    | 11/10/2020       | An electronic transfer of approximately $149,900 from the SBA to a Bank-5 account in the name of the 56th Street LLC that traveled through the States of New Jersey and Maine. |
| 21    | 11/10/2020       | An electronic transfer of approximately $149,900 from the SBA to a Bank-5 account in the name of 138 Nobility LLC that traveled through the States of New Jersey and Maine. |

In violation of Title 18, United States Code, Sections 1343 and 2.

**COUNTS 22-26**
(Money Laundering by Transacting in Criminal Proceeds)
*(EIDL loans - Spitzer)*

1.      Paragraphs 1 through 13 of Count 1 of the Indictment and paragraphs 1 through 20 of Counts 20-21 of the Indictment are incorporated as if set forth in full herein.

2.      On or about the dates set forth in the table below, in the District of New Jersey and elsewhere, defendant,

**ARTHUR SPITZER,**

did knowingly engage and attempt to engage in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, as set forth in the table below, such property having been derived from a specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343, each monetary transaction constituting a separate count:

| Count | Approximate Date | Description of Monetary Transaction |
|---|---|---|
| 22 | 11/12/2020 | An electronic transfer of approximately $100,000 of the proceeds from the 56th Street LLC EIDL loan from the Bank-5 account in the name of the 56th Street LLC to a Bank-5 account in the name of defendant SPITZER and defendant SPITZER's spouse. |
| 23 | 11/12/2020 | An electronic transfer of approximately $45,000 of the proceeds from the 56th Street LLC EIDL loan from the Bank-5 account in the name of the 56th Street LLC to a Bank-5 account in the name of ZTS Express Inc. |
| 24 | 11/12/2020 | An electronic transfer of approximately $100,000 of the proceeds from the 138 Nobility LLC EIDL loan from the Bank-5 account in the name of 138 Nobility LLC to a Bank-5 account in the name of ZTS Express Inc. |
| 25 | 11/12/2020 | An electronic transfer of approximately $25,000 of the proceeds from the 138 Nobility LLC EIDL loan from the |

| | | |
|---|---|---|
| | | Bank-5 account in the name of 138 Nobility LLC to a Bank-5 account in the name of ZTS Express Inc. |
| 26 | 11/12/2020 | An electronic transfer of approximately $20,000 of the proceeds from the 138 Nobility LLC EIDL loan from the Bank-5 account in the name of 138 Nobility LLC to a Bank-5 account in the name of ZTS Express Inc. |

In violation of Title 18, United States Code, Sections 1957(a) and 2.

## COUNTS 27-28
(Wire Fraud)
*(EIDL loans - Deutsch)*

1.      Paragraphs 1 and 2 of Counts 20-21 of the Indictment are incorporated as if set forth in full herein.

### The Scheme

2.      From in or about June 2020 through at least as late as November 2020, defendant DEUTSCH devised and intended to devise a scheme to defraud the SBA, and to obtain federal COVID-19 emergency relief monies by means of materially false and fraudulent pretenses, representations and promises.

### Object of the Scheme

3.      The object of the scheme was for defendant DEUTSCH to financially enrich himself by obtaining EIDL loans that were intended for small businesses distressed by the COVID-19 pandemic, through the submission of fraudulent loan applications to the SBA that included false statements about the applicant companies' gross revenues, cost of goods sold, and lost rents.

### Manner and Means of the Scheme

4.      It was part of the scheme that defendant DEUTSCH submitted and caused to be submitted more than one dozen EIDL loan applications.  The loan applications contained materially false and fraudulent information about one or more of the following data points: the company's number of employees, gross revenues, cost of goods sold, and lost rents due to the COVID-19 pandemic.

50

5.      It was further part of the scheme that based on the materially false information, the SBA approved approximately 15 EIDL loans for defendant DEUTSCH's companies.

6.      It was further part of the scheme that after approving the EIDLs, the SBA disbursed the loan proceeds into bank accounts maintained by defendant DEUTSCH.

7.      It was further part of the scheme that as a result of the fraudulent applications, defendant DEUTSCH unlawfully obtained more than $1,800,000 in federal COVID-19 emergency relief money.

### *Blancke Street LLC EIDL Loan*

8.      It was further part of the scheme that on or about September 2, 2020, defendant DEUTSCH applied for an EIDL loan on behalf of 1500 West Blancke Street LLC. The 1500 West Blancke Street LLC EIDL application falsely stated that 1500 West Blancke Street LLC had gross revenues of $378,000 for the 12 months prior to the disaster, and cost of goods sold of $65,000 for the 12 months prior to the disaster. The actual revenue and cost of goods sold for 1500 West Blancke Street LLC was significantly lower than the amounts stated on the EIDL application.

9.      It was further part of the scheme that in or around September 2020, based on the fraudulent application, SBA approved the 1500 Blancke Street LLC EIDL loan in the amount of $150,000.

10.     It was further part of the scheme that in or around September 2020, the SBA disbursed approximately $149,900 into a Bank-3 account in the name of 1500 West Blancke Street LLC, which was controlled by defendant DEUTSCH.

***537 Knickerbocker Enterprises LLC EIDL Loan***

11.     It was further part of the scheme that on or about September 3, 2020, defendant DEUTSCH applied for an EIDL loan on behalf of 537 Knickerbocker Enterprises LLC.  The 537 Knickerbocker Enterprises LLC EIDL application falsely stated that 537 Knickerbocker Enterprises LLC had gross revenues of $460,500 for the 12 months prior to the disaster, and cost of goods sold of $118,000 for the 12 months prior to the disaster.   The actual income for 537 Knickerbocker LLC was significantly lower than stated on the EIDL application.

12.     It was further part of the scheme that in or around November 2020, based on the fraudulent application, SBA approved the 537 Knickerbocker Enterprises LLC EIDL loan in the amount of $150,000.

13.     It was further part of the scheme that in or around November 2020, the SBA disbursed approximately $149,900 into a Bank-3 account in the name of 537 Knickerbocker Enterprises LLC, which was controlled by defendant DEUTSCH.

## Execution of the Scheme

14.     On or about the dates set forth below, in the District of New Jersey and elsewhere, the defendant,

**MENDEL DEUTSCH,**

for the purpose of executing the scheme described above, transmitted and caused to

be transmitted by means of wire communications in interstate commerce the writings, signs, and signals described below for each count, each transmission constituting a separate count:

| Count | Approximate Date | Description of Interstate Wire |
|---|---|---|
| 27 | 9/4/2020 | An electronic transfer of approximately $149,900 from the SBA to a Bank-3 account in the name of 1500 West Blancke Street LLC that traveled through the States of New Jersey and New York. |
| 28 | 11/23/2020 | An electronic transfer of approximately $149,900 from the SBA to a Bank-3 account in the name of 537 Knickerbocker Enterprises LLC that traveled through the States of New Jersey and New York. |

In violation of Title 18, United States Code, Sections 1343 and 2.

**COUNTS 29-30**
(Money Laundering by Transacting in Criminal Proceeds)
*(EIDL loans - Deutsch)*

1.      Paragraph 2 of Count 6 of the Indictment and paragraphs 1 through 14

of Counts 27-28 of the Indictment are incorporated as if set forth in full herein.

2.      On or about the dates set forth in the table below, in the District of

New Jersey and elsewhere, defendant,

**MENDEL DEUTSCH,**

did knowingly engage and attempt to engage in monetary transactions by, through,

and to a financial institution, affecting interstate and foreign commerce, in

criminally derived property of a value greater than $10,000, as set forth in the table

below, such property having been derived from a specified unlawful activity, that is,

wire fraud in violation of Title 18, United States Code, Section 1343, each monetary

transaction constituting a separate count:

| Count | Approximate Date | Description of Monetary Transaction |
|---|---|---|
| 29 | 9/4/2020 | An electronic transfer of approximately $149,900, representing the proceeds from the 1500 West Blancke Street LLC EIDL loan from the Bank-3 account in the name of 1500 West Blancke Street LLC to a Bank-3 account in the name of Deutsche Equity LLC. |
| 30 | 11/23/2020 | An electronic transfer of approximately $149,900, representing the proceeds from the 537 Knickerbocker Enterprises LLC EIDL loan from the Bank-3 account in the name of 537 Knickerbocker Enterprises LLC to a Bank-3 account in the name of Deutsche Equity LLC. |

In violation of Title 18, United States Code, Sections 1957(a) and 2.

## FORFEITURE ALLEGATION AS TO COUNTS
## 1-4, 8, 11, 20-21, and 27-28

1.      The allegations contained in Counts 1-4, 8, 11, 20-21, and 27-28 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      As a result of committing the offenses charged in Counts 1-4, 8, 11, 20-21, and 27-28 of this Indictment, the defendants charged in each such count shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, said defendant obtained that constitutes or is derived from proceeds traceable to the each of the offenses alleged in Counts 1-4, 8, 11, 20-21, and 27-28 of this Indictment.

## FORFEITURE ALLEGATION AS TO COUNT 6

1.      The allegations contained in Count 6 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

2.      As a result of committing the conspiracy offense charged in Count 6 of this Indictment, the defendants charged shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c), any property, real or personal, said defendant

obtained that constitutes or is derived from proceeds traceable to the offense charged in Count 6 of this Indictment.

## FORFEITURE ALLEGATION AS TO COUNTS 7 and 10

1.      The allegations contained in Counts 7 and 10 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(2)(A).

2.      As a result of committing one or both of the offenses charged in Counts 7 and 10 of this Indictment, the defendants charged in each such count shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property, real or personal, constituting, or derived from, said defendant obtained directly or indirectly as a result of the each such offense.

## FORFEITURE ALLEGATION AS TO COUNTS 12-19, 22-26, and 29-30

1.      The allegations contained in Counts 12-19, 22-26, and 29-30 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(1).

2.      As a result of committing one or more of the money laundering offenses charged in Counts 12-19, 22-26, and 29-30 of this Indictment, the defendants charged in each such count shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in each such offense, and all property traceable to such property.

## SUBSTITUTE ASSET PROVISION

1.      If any of the property described above, as a result of any act or omission of the respective defendant:

56

a. cannot be located upon the exercise of due diligence;

b. has been transferred to or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21 United States Code, Section 853(p), as incorporated by Title 18 United States Code, Section 982(a)(1) and Title 28 United States Code, Section 2461(c), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described above.

A TRUE BILL

FOREPERSON

*Philip R. Sellinger*
PHILIP R. SELLINGER
United States Attorney

CASE NUMBER: _____

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

ARTHUR SPITZER
MENDEL DEUTSCH
JOSHUA FELDBERGER

INDICTMENT FOR
18 U.S.C. § 1349
18 U.S.C. § 1344
18 U.S.C. § 1343
18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 1014
18 U.S.C. § 1957(a)
18 U.S.C. § 2

A True Bill,

_____
FOREPERSON

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

DANIEL A. FRIEDMAN
ASSISTANT U.S. ATTORNEY
CAMDEN, NEW JERSEY
(856) 757-5026